```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHAN AH WAH, et al.,                        :
                                            :
                    Plaintiffs,             :
                                            :           15 Civ. 8974 (LGS)
            -against-                       :
                                            :           OPINION AND ORDER
HSBC NORTH AMERICA                          :
HOLDINGS INC., et al.,                      :
                                            :
                    Defendants.             :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/11/2016

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Chan Ah Wah ("Chan") and Lim Cheok Kee Willy ("Lim"), acting pro se, sue seventeen large international banks (or their affiliates) for Defendants' alleged involvement in a conspiracy to manipulate benchmark rates in the foreign exchange ("FX") market, and for overcharges Plaintiffs paid in transaction fees, interest and commissions. On April 28, 2016, Defendants moved to dismiss the Second Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to stay the case pursuant to an order in a related action, *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13 Civ. 7789 (S.D.N.Y.). For the following reasons, Defendants' motion to dismiss is GRANTED and the alternative motion for a stay is DENIED as moot.

I.  **BACKGROUND**

The following facts are taken from the Complaint and assumed to be true for the purposes of this motion. *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

Plaintiffs claim to have been injured by Defendants' conspiracy to manipulate benchmark rates in the FX market and to have suffered from overcharges in transaction fees, interest and commissions. Plaintiffs participated in the FX spot, forward, swap and futures markets, and dealt directly with "Defendants' trader dealing desk." While the Complaint describes at length

Defendants' alleged conspiracy, it contains few allegations of Plaintiffs' injuries.[1]  According to the Complaint, Defendants deducted $2,300,000 from a cash deposit savings account to cover losses in FX instruments Plaintiffs held.  Defendants' deduction of these funds forced Plaintiffs' three children to stop schooling and "disturbed" them "emotionally and socially."  Plaintiff Chan suffered post-traumatic stress disorder and was forced to send her mother to a hospital because Chan could no longer afford to pay for a housekeeper to care for her dementia at home.  Plaintiff Lim was forced to sell his real estate investments and similarly could no longer afford to support his mother and younger brother in Malaysia.

On November 16, 2015, Plaintiffs filed their original complaint against six HSBC entities.  After a conference held on January 7, 2016, the parties were directed to meet and discuss, among other things, whether Plaintiffs' transactions were U.S. or foreign transactions.  Plaintiffs filed a First Amended Complaint on March 10, 2016, adding eleven additional defendants.  Plaintiffs filed a Second Amended Complaint on March 31, 2016, and Defendants filed the instant motion on April 28, 2016.[2]

---

[1]  The factual allegations in the Complaint concerning the alleged conspiracy to manipulate FX benchmark rates are copied entirely from complaints filed in the related, consolidated action. More detailed summaries of the facts concerning the alleged conspiracy are set forth in the Court's prior opinions in that matter.  *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581 (S.D.N.Y. 2015) ("*FOREX*"); *see also* No. 13 Civ. 7789, 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016).

[2]  By order dated April 29, 2016, the Court granted the motion by Defendants Barclays Capital Inc., Barclays Bank PLC, Citibank N.A., Citigroup, Inc., JP Morgan Chase Bank N.A., JP Morgan Chase & Co., RBS Securities Inc, The Royal Bank Of Scotland Group PLC, The Royal Bank of Scotland PLC, UBS Securities LLC and UBS AG to join the motion to dismiss filed by Defendants HSBC North American Holdings, Inc., HSBC Bank plc, HSBC Holdings plc, HSBC Bank USA, N.A., HSBC Securities (USA) Inc., and the Hongkong and Shanghai Corporation Limited, Singapore Branch.

## II. STANDARD

"On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn*, 795 F.3d at 306. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts, however, read pro se pleadings with "special solicitude" and interpret them "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (internal quotation marks omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").

## III. DISCUSSION

Plaintiffs assert claims under the Sherman Antitrust Act, 15 U.S.C. § 1, et seq., and the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1, et seq. Because the Complaint fails to plead any U.S. connection for the FX instruments over which they are suing, it fails to state cognizable claims under either statute.

The Foreign Trade Antitrust Improvements Act ("FTAIA") provides:

> Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless — (1) such conduct has a direct, substantial, and reasonably foreseeable effect (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

15 U.S.C. § 6a.

This statute "lays down a general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach," but then brings back certain conduct so long as its "'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain export commerce)" gives rise to a Sherman Act claim. *F. Hoffmann-La-Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004). "The phrase 'trade or commerce with foreign nations' includes transactions between foreign and domestic commercial entities, not just transactions involving a foreign sovereign." *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 301–02 (3d Cir. 2002), *overruled on other grounds by Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011).

In *FOREX*, claims brought by foreign plaintiffs were dismissed because they sought "to apply American antitrust laws to Defendants' foreign conduct for harm suffered outside the United States by Foreign Plaintiffs and their putative classes." 74 F. Supp. 3d at 599. Each of the dismissed complaints either expressly excluded "United States persons and transactions occurring in the United States" or confined its claims to those arising out of foreign FX transactions. *Id*.

Plaintiffs here are similarly situated to the plaintiffs whose claims were held to be barred by the FTAIA in *FOREX*. The Complaint does not explicitly allege any transaction on a U.S. exchange or with a U.S. desk of a Defendant. Although the Complaint is silent as to the details of the FX instruments and transactions over which Plaintiffs are suing, its allegations suggest that Plaintiffs lived and transacted entirely abroad during the relevant period. For example, the Complaint alleges that Plaintiffs currently reside in New York and that their oldest son was born in New York in 2000, but that they subsequently had two younger children *while in Malaysia*. The Complaint further alleges that Plaintiffs decided to bring their children "back to New York"

4

after Defendants deducted from their account in August 2010, suggesting that Plaintiffs lived (and therefore entered into FX transactions) exclusively in Malaysia until then.

This reading of the Complaint -- that the relevant transactions took place in Malaysia and Singapore while Plaintiffs resided in Malaysia -- is consistent with statements Plaintiffs made at the January 7, 2016, conference. At the conference, Plaintiffs admitted that they transacted directly with an HSBC entity through a cash deposit account in Singapore while they were living in Singapore and Malaysia. Plaintiffs could not articulate any connection to the United States other than their belief that whoever they were dealing with could "call-forward" to an affiliated desk or dealer in this country. The understanding that Plaintiffs did not engage in any domestic FX transactions is also consistent with allegations they made in a prior action, *Chan Ah Wah v. HSBC Bank*, No. 13 Civ. 4789 (S.D.N.Y.). The complaint in that case described a savings account in Malaysia with United Overseas Bank Malaysia that was transferred to "HSBC private bank of Malaysia" in 2005 and to "HSBC Singapore" in 2007 or 2008.

Because even under the liberal reading afforded pro se plaintiffs the Complaint does not allege any connection to the United States, and instead describes FX transactions that are "wholly foreign," Plaintiffs' antitrust claims are barred by the FTAIA and therefore dismissed. *See Empagran*, 542 U.S. at 163 (holding that FTAIA bars claims from commerce that is "wholly foreign"); *FOREX*, 74 F. Supp. 3d at 599 ("Because the Foreign Complaints' Section 1 claims implicate exclusively foreign activity that does not sufficiently affect American commerce, they are dismissed.").

The Complaint's failure to allege any conduct by Defendants occurring within the United States also serves to bar Plaintiffs' claims under the CEA. Although the CEA "is silent as to extraterritorial reach," it is presumed to be "'primarily concerned with domestic conditions,'"

5

and private lawsuits "must be based on transactions occurring in the territory of the United States." *Loginoxskaya v. Batratchenko*, 764 F.3d 266, 271–72 (2d Cir. 2014) (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010)); *see also id.* at 273 ("[T]o bring a suit under § 22, the transaction at issue—the conduct underlying the suit—must have occurred within the United States."). As described above, the Complaint does not plausibly allege any transactions occurring within the United States.

Plaintiffs' opposition brief -- which merely copies sections of the briefs submitted by the plaintiffs in the consolidated action and the Court's March 31, 2016, opinion concerning personal jurisdiction -- does not address the basis of Defendants' motion to dismiss. Even if some of the Defendants named in this lawsuit would be subject to personal jurisdiction in this forum because they are either incorporated or have their principal place of business here, *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011), Plaintiffs' claims would still be barred by the FTAIA and CEA for the reasons set forth above. Whereas personal jurisdiction considers a court's ability to hear a lawsuit involving a defendant based on that defendant's contacts with the forum, the bar on the extraterritorial application of the Sherman Antitrust Act and the CEA is a separate (and substantive) hurdle that Plaintiffs must overcome to state a claim upon which relief can be granted.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED in its entirety, mooting their alternative motion for a stay. Any motion by Plaintiffs for leave to file a Third Amended Complaint shall be filed within thirty days of this order. Plaintiffs are warned that any application must set forth in detail what additional allegations concerning Plaintiffs' transactions in FX instruments will be added to address the deficiencies described above. Absent

allegations concerning domestic FX transactions, leave to amend will be denied as futile for the reasons set forth in this opinion.

 The Clerk of Court is directed to close the motion at Docket No. 87.

 SO ORDERED.

Dated: August 11, 2016,
   New York, New York

                **LORNA G. SCHOFIELD**
                **UNITED STATES DISTRICT JUDGE**