UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/22/2019

------------------------------------------------------------X
CHAN AH WAH, et al.,
                            Plaintiffs,

            -against-

HSBC NORTH AMERICA HOLDINGS INC., et al.,
                            Defendants.
------------------------------------------------------------X

15 Civ. 8974 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

    Pro se Plaintiffs Chan Ah Wah and Lim Cheok Kee Willy bring this action against HSBC North America Holdings Inc., HSBC Bank plc, HSBC Holdings plc, HSBC Bank USA N.A., HSBC Securities (USA) Inc. and The Hongkong and Shanghai Banking Corporation Limited, Singapore Branch (collectively, "HSBC"). Plaintiffs' Third Amended Complaint (the "TAC") alleges that HSBC engaged in a conspiracy to manipulate benchmark rates in the foreign exchange ("FX") market, in violation of the Sherman Act, 15 U.S.C. § 1 *et seq.*, and the Commodity Exchange Act (the "CEA"), 7 U.S.C. § 1 *et seq.* The TAC also alleges breach of contract, fraud and various other state common law causes of action. Defendants move to dismiss the TAC for lack of subject matter jurisdiction (Rule 12(b)(1)[1]), lack of personal jurisdiction (Rule 12(b)(2)) and failure to state a claim (Rule 12(b)(6)). For the following reasons, Defendants' motion is granted.

---

[1] All references to rules herein are to the Federal Rules of Civil Procedure.

I.   **BACKGROUND**

Familiarity with the underlying facts and procedural history is assumed. *See Wah v. HSBC N. Am. Holdings Inc.*, No. 15 Civ. 8974, 2016 WL 4367976 (S.D.N.Y. Aug. 11, 2016) ("*Wah I*"); *Wah v. HSBC N. Am. Holdings Inc.*, No. 15 Civ. 8974, 2017 WL 2417854 (S.D.N.Y. June 5, 2017) ("*Wah II*"). Except as otherwise stated, the following alleged facts are taken from the TAC and documents integral to it, and are assumed to be true only for the purpose of this motion. *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018).

A.   **The Parties**

Plaintiffs Chan Ah Wah and Lim Cheok Kee Willy are residents of New York who reside with their son, who is a United States citizen.

Defendants HSBC Holdings plc and HSBC Bank plc are United Kingdom public limited companies headquartered in London, England. Defendant HSBC North America Holdings Inc. is a Delaware corporation headquartered in New York. Defendant HSBC Bank USA N.A. is a company with its principal place of business in New York. The TAC does not allege where The Hongkong and Shanghai Banking Corporation Limited and HSBC Securities (USA) Inc. are incorporated or headquartered, but the Court takes judicial notice that The Hongkong and Shanghai Banking Corporation Limited is a Hong Kong company with its headquarters in Hong Kong,[2] and HSBC Securities (USA) Inc. is a Delaware corporation headquartered in New York.[3]

---

[2] *See The Cyber Search Centre of the Integrated Companies Registry Information System*, HONG KONG COMPANIES REGISTRY, https://www.icris.cr.gov.hk/csci/cns_search.jsp (last visited February 8, 2019) (search for "Hongkong and Shanghai Banking Corporation Limited").
[3] *See Division of Corporations - Filing*, DE DEP'T OF STATE, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited Feb. 8, 2019) (search for "HSBC Securities"); *EDGAR Search Results*, SEC. & EXCHANGE COMM'N,

*See Wright-Upshaw v. Nelson*, No. 13 Civ. 3367, 2014 WL 692870, at *1 n.1 (E.D.N.Y. Feb. 19, 2014) (taking judicial notice of a defendant's state of incorporation and headquarters).

**B.     Plaintiffs' Allegations of U.S. Trading Activity**

On August 11, 2016, the Court dismissed Plaintiffs' Second Amended Complaint ("SAC"). *See Wah I*, 2016 WL 4367976, at *1. The Court held that because liability under the Sherman Act and CEA cannot be premised on foreign harm resulting from foreign conduct, the SAC's "fail[ure] to plead any U.S. connection" for the subject FX instruments was fatal to Plaintiffs' federal antitrust claims. *See id.* at *2–3.

On October 28, 2016, Plaintiffs moved for leave to amend. The motion was granted based on the following allegations, which plausibly showed Plaintiffs' claimed U.S. connection. *See Wah II*, 2017 WL 2417854, at *2. The TAC alleges that Plaintiffs banked with HSBC Private Bank Malaysia from 2005 to 2007, and HSBC Singapore from 2007 or 2008 to 2010. Plaintiffs entered into 5,400 FX spot transactions with HSBC -- some in the over-the-counter market and others on the Chicago Mercantile Exchange or Intercontinental Exchange. Plaintiffs arranged these transactions "by telephone directly [with] HSBC traders in the United States." The TAC further alleged that Plaintiffs spoke by telephone with HSBC traders at a time of day when FX markets would be closed in Malaysia or Singapore but open in New York; that during some of these phone calls the HSBC traders referenced the New York market closing time and holiday schedule; and that New York is one of the two largest FX trading centers. Based on

---

https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001092524&owner=exclude&count=40&hidefilings=0.

these allegations, the Court held that Plaintiffs' claimed U.S. connection was plausible and Plaintiffs were granted leave to file the TAC. *See Wah II*, 2017 WL 2417854, at *2.

### C. Plaintiffs' Asserted Membership in the FOREX Class

Plaintiffs have submitted countless unsolicited letters claiming to be members of the settlement classes in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13 Civ. 7789 (S.D.N.Y.) ("*FOREX*"). The plaintiffs in *FOREX* brought federal antitrust claims against several banks, including HSBC, based on alleged manipulation of benchmark rates in the FX market. On December 15, 2015, the court in *FOREX* granted preliminary approval of a class action settlement between the *FOREX* putative class and HSBC.[4] Two settlement classes were preliminarily certified:

> **The Direct Settlement Class**: All Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or coconspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories. . . .
>
> **The Exchange-Only Settlement Class**: All Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange. . . .

---

[4] In adjudicating a motion to dismiss, a district court may take judicial notice of the existence of its prior rulings as well as filings in other relevant cases. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *accord Chau v. Donovan*, No. 18 Civ. 3365, 2019 WL 120766, at *2 (S.D.N.Y. Jan. 7, 2019).

4

On August 6, 2018, the Court in *FOREX* granted final approval of the HSBC settlement and finally certified the two settlement classes.

On April 25, 2018, the Court ordered briefing in the instant case on the issue of whether Plaintiffs here are members of a *FOREX* settlement class. Pursuant to this order, HSBC and the *FOREX* class counsel filed a joint brief citing substantial evidence that Plaintiffs had not engaged in domestic FX trading (the "Joint Brief"). This evidence includes Plaintiffs' transaction records, which reflect that Plaintiffs transacted with HSBC Singapore -- an entity that does not have any branches or offices in the United States. This evidence also includes a letter from HSBC rebutting the contention that U.S. FX trades can be conducted through HSBC Singapore. The letter explains that individuals wanting to trade FX with a U.S.-based HSBC branch typically would have to open an account with HSBC Bank USA, N.A., one of its domestic affiliates or a broker with a U.S.-based HSBC account. Moreover, the letter asserts that if an individual placed FX orders through HSBC Singapore in the middle of the night, Singapore time, they would be transacting not with a U.S.-based HSBC branch, but with HSBC Singapore's night trading desk. The Joint Brief also cites Plaintiffs' *FOREX* claim forms, in which Plaintiffs state that they did not engage in any exchange trading, thus casting doubt on Plaintiffs' contention that they entered into FX Exchange-Traded Instruments on the Chicago Mercantile Exchange or Intercontinental Exchange. Additionally, HSBC and the *FOREX* plaintiffs submitted the declarations of Kristen M. Anderson, one of the attorneys representing the *FOREX* classes, and Angela Ferrante, the Senior Vice President of Operations for the *FOREX* claims administrator. Anderson and Ferrante, both of whom were personally involved in the claims process, stated that they reviewed Plaintiffs' records and found no evidence that Plaintiffs had

5

transacted FX in the United States, and therefore concluded that Plaintiffs were not *FOREX* class members.

After carefully reviewing the parties' submissions and accompanying declarations, the Court held that Plaintiffs were not members of the settlement classes in *FOREX*. The Court stated that it relied on the arguments made in the Joint Brief in reaching this conclusion.

## II.   STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts, however, read pro se pleadings with "special solicitude" and interpret them "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (internal quotation marks omitted).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *John Brady v. Int'l Bhd. of Teamsters, Theatrical Drivers & Helpers Local 817,* 741 F.3d 387, 389 (2d Cir. 2014). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Mastafa v. Chevron Corp., 770* F.3d 170, 177 (2d Cir. 2014) (internal quotation marks omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true and

draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *accord Weinberger v. Town of Fallsburg*, No. 18 Civ. 988, 2019 WL 481733, at *3 (S.D.N.Y. Feb. 6, 2019).

## III. DISCUSSION

The TAC is construed to base subject matter jurisdiction on diversity of citizenship and the presence of a federal question. As discussed below, the Court lacks diversity jurisdiction. Although there is federal question jurisdiction over the federal antitrust claims, those claims are dismissed pursuant to Rule 12(b)(6), and the Court declines to exercise supplemental jurisdiction over the state law claims. Therefore, the TAC is dismissed.

### A. The Court Lacks Diversity Jurisdiction

Federal courts do not have diversity jurisdiction over actions "between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." 28 U.S.C. § 1332(a)(2). Here, the TAC alleges that HSBC North America Holdings Inc. is headquartered in New York and HSBC Bank USA N.A. has its principal place of business in New York. The Court takes judicial notice that HSBC Securities (USA) Inc. is headquartered in New York. The TAC alleges that Plaintiffs reside in New York. Plaintiffs have not met their "burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998); *accord Shandong Yuyuan Logistics, Co. v. Soleil*

7

*Chartered Bank*, No. 17 Civ. 9421, 2018 WL 3212462, at *2 (S.D.N.Y. June 28, 2018). The Court therefore lacks diversity jurisdiction.

**B.     The Federal Antitrust Claims are Dismissed**

The Court has federal question jurisdiction, as the TAC alleges violations of the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and the CEA, 7 U.S.C. § 1 *et seq. See S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) ("[T]he district court has subject matter jurisdiction unless the purported federal claim is clearly immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." (citations and quotation marks omitted)); *accord Yager v. Vignieri*, No. 16 Civ. 9367, 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017). However, these claims are dismissed under Rule 12(b)(6) because the TAC does not adequately plead that Plaintiffs engaged in domestic FX trading activity.

"The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001); *accord Novick v. AXA Network, LLC*, 714 Fed. App'x 22, 25 (2d Cir. 2017). "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *Aramony*, 254 F.3d at 410; *accord In re Terrestar Corp.*, No. 16 Civ. 1421, 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017). "Although not binding, the doctrine 'counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013) (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008); *accord Reches v. Morgan Stanley & Co. LLC*, 736 Fed. App'x

306, 307 (2d Cir. 2018) (summary order). "The doctrine is properly applied only when the parties had a full and fair opportunity to litigate the initial determination." *Hamlen v. Gateway Energy Servs. Corp.*, No. 16 Civ. 3526, 2018 WL 1568761, at *1 (S.D.N.Y. Mar. 29, 2018) (citing *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002)). The law of the case doctrine is "driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009); *accord Tomasino v. Estee Lauder Companies, Inc.*, No. 13 Civ. 4692, 2015 WL 1470177, at *1 (E.D.N.Y. Mar. 31, 2015).

In holding that Plaintiffs were not members of the *FOREX* settlement classes, the Court "necessarily resolved" the question of whether Plaintiffs had transacted FX in the United States. *See Aramony*, 254 F.3d at 410. Indeed, that question was dispositive -- the Joint Brief and supporting declarations, which the Court relied on in reaching its decision, were directed solely at establishing the purely foreign nature of Plaintiffs' trading activity. Thus, the question of where Plaintiffs transacted FX has been resolved, and no "cogent and compelling reason[]" exists to revisit this ruling. *See Starbucks Corp.*, 736 F.3d at 208.

"[T]he parties had a full and fair opportunity to litigate the initial determination." *Hamlen*, 2018 WL 1568761, at *1. Plaintiffs filed fifty-five pages of briefing and other materials in support of their position, which the Court considered but ultimately found unpersuasive. "In sum," the Court held, "the Chans have failed to proffer any evidence that they are members of either [settlement] class." Application of the law of the case doctrine is further warranted by the salience of considerations of judicial economy and finality in this case. *See Carr*, 557 F.3d at 102. The Court has received well over one-hundred unsolicited and unwanted letters, e-mails, packages and phone calls from Plaintiffs, many of which pertain to Plaintiffs' membership in the

9

*FOREX* classes. The Court's prior order regarding Plaintiffs' *FOREX* class membership settled the question of whether Plaintiffs transacted FX in the United States.

Plaintiffs' federal antitrust claims are dismissed based on the Court's prior ruling that Plaintiffs did not engage in FX transactions in the U.S. Under the Federal Trade Antitrust Improvements Act, 15 U.S.C. § 6a, Sherman Act liability cannot be premised on foreign conduct giving rise to adverse foreign effects that are independent of any adverse domestic effect. *See F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004); *accord FOREX*, 74 F. Supp. 3d 581, 599 (S.D.N.Y. 2015). Likewise, private actions under the CEA "must be based on transactions occurring in the territory of the United States." *Loginovskaya v. Batratchenko*, 764 F.3d 266, 272 (2d Cir. 2014). Because Plaintiffs did not engage in any domestic FX trading, the TAC does not adequately plead Sherman Act or CEA violations, and accordingly those claims are dismissed under Rule 12(b)(6) for failure to state a claim.

### C. The Court Declines to Exercise Supplemental Jurisdiction over the State Claims

Although the federal claims in this action are dismissed, the Court has discretion whether to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity . . . ." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006); *accord Collins v. Lindstrom*, No. 18 Civ. 6696, 2018 WL 6547054, at *2 (S.D.N.Y. Nov. 26, 2018). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *accord*

*Krechmer v. Tantaros*, No. 17-4061, 2018 WL 4044048, at *3 (2d Cir. Aug. 24, 2018); *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) ("[O]ur circuit takes a very strong position that state issues should be decided by state courts.").

The Court declines to exercise supplemental jurisdiction over the state law claims. This case is still in the relatively early stages of litigation. Fact discovery has not closed and all deadlines have been stayed pending resolution of this motion. Declining to exercise supplemental jurisdiction over the state law claims is proper under these circumstances.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the TAC is GRANTED. The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to the pro se Plaintiffs, close the motion at Docket No. 272 and close the case.

Dated: February 22, 2019
New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**